# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., individually, and on behalf of itself and other creditors similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2018-0274-AGB |
| CLAUDIO BALLARD, KEITH DELUCIA, GARY KNUTSEN, SHEPHARD LANE, PETER LUPOLI, IRA LEEMON, JOHN KIDD, CELESTIAL PARTNERS, LLC, ZAAH TECHNOLOGIES, INC., VEEDIMS, LLC, POTENS PARTNERS LLC, AND DATATREASURY CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

WHEREAS:

A. On June 2, 2015, the United States District Court for the Eastern District of Texas entered a final judgment awarding JPMorgan Chase Bank, N.A. ("J.P. Morgan") damages of $69 million against Data Treasury Corporation ("DTC") for breach of a June 2005 licensing agreement (the "Judgment"). On May 19, 2016, the United States Court of Appeals for the Fifth Circuit affirmed the Judgment.

B.     J.P. Morgan has filed two actions in the Court of Chancery in aid of its efforts to collect on the Judgment. The two actions are closely related as they both challenge DTC's payment of dividends, albeit in different years, as unlawful under the Delaware General Corporation Law (8 *Del. C.* §§ 170-74).

C.     In the first action, filed on December 27, 2017, J.P. Morgan challenges dividends DTC paid in 2011 and 2012.[1] Defendants answered the complaint in the first action, which is in discovery and which is not the subject of this appeal.

D.     The second action, filed on April 12, 2018, is the subject of this appeal. In this action, J.P. Morgan sued DTC, its directors, and certain affiliates (collectively, "Defendants") to recover two categories of distributions that DTC allegedly made unlawfully to evade its liability to J.P. Morgan: (i) dividends DTC paid from 2006 to 2010 and (ii) other individual payments DTC made to insiders from 2011 to 2013.

E.     Defendants moved to dismiss the complaint in this action, arguing that J.P. Morgan lacked standing under Section 174 to challenge the payment of dividends from 2006 to 2010 on the theory that J.P. Morgan was not a creditor of DTC during that period, and that J.P. Morgan's unlawful dividend and fraudulent transfer claims were untimely under two different statutory provisions.

---

[1] *JPMorgan Chase Bank, N.A. v. Ballard*, C.A. No. 2017-0923-AGB, Verified Compl. ¶¶ 81-87 (Dkt. 1).

F.  On July 11, 2019, the court issued an opinion granting in part and denying in part Defendants' motion to dismiss (the "Opinion").[2] On July 19, 2019, the court entered an implementing order. The Opinion decided three issues of first impression.

G.  First, the court held that J.P. Morgan had standing to assert a claim as a "creditor" of DTC within the meaning of Section 174 to recover for itself and other creditors of DTC dividends that it paid from 2006 to 2010 even though J.P. Morgan did not obtain its Judgment against DTC until 2015.

H.  Second, the court held that the six-year limitations period in Section 174 is a statute of repose (to which tolling principles do not apply) and not a statute of limitations (to which tolling principles may be applied). As a result, the court determined that J.P. Morgan's unlawful dividend claim with respect to dividends that were paid from 2006 to 2010 must be dismissed as untimely because J.P. Morgan did not file this action until 2018, more than six years after the payment period in question.[3]

---

[2] *JPMorgan Chase Bank, N.A. v. Ballard*, --A.3d--, 2019 WL 3022338 (Del. Ch. July 11, 2019).

[3] This time-bar issue is irrelevant to J.P. Morgan's unlawful dividend claim in its first action because that action was filed within six years of the dividends at issue in that case. *JPMorgan Chase*, C.A. No. 2017-0923-AGB, Verified Compl. ¶¶ 54, 68.

3

I.    Third, the court held that the one-year discovery period in Section 1309(1) of the Delaware Uniform Fraudulent Transfer Act[4] begins to run when the fraudulent nature of an allegedly fraudulent transfer is or could reasonably have been discovered, rather than when the mere existence of the allegedly fraudulent transfer is or could reasonably have been discovered.  The court then determined that J.P. Morgan had timely filed claims challenging as fraudulent both the dividends paid from 2006 to 2010 and the individual payments made to insiders from 2011 to 2013.

J.    On July 26, 2019, Defendants filed a motion to certify an interlocutory appeal of the Opinion and implementing order.  Defendants focus their application on challenging the third issue of first impression the court decided, *i.e.*, that the one-year discovery period in Section 1309(1) of the Delaware Uniform Fraudulent Transfer Act starts when the fraudulent nature of an allegedly fraudulent transfer is or could reasonably have been discovered.

K.    On July 29, 2019, J.P. Morgan filed a combined response to Defendants' motion and alternative cross-motion for certification of an interlocutory appeal.  J.P. Morgan contends that interlocutory review would not be an efficient path forward for this litigation.  In its alternative cross-motion, J.P. Morgan argues further that, if the court were to conclude otherwise, any interlocutory appeal should

---

[4] 6 *Del. C.* § 1309(1).

4

address the second issue of first impression this court decided, *i.e.*, that the six-year limitations period in Section 174 is a statute of repose.[5]

NOW THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, ADJUDGED, and DECREED this 7th day of August, 2019, as follows:

1.      Supreme Court Rule 42 provides that an interlocutory appeal will not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[6] It further states that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal process of litigation, cause delay, and can threaten to exhaust scare party and judicial resources."[7] Under that rule, there are eight criteria "the trial court should consider" when evaluating an interlocutory appeal.[8]

2.      The Opinion decided three substantial issues of material importance (described in paragraphs G-I above) that directly determined which of J.P. Morgan's claims can go forward in this action. The criterion in Rule 42(b)(ii)(A) is satisfied

---

[5] When contacted to determine if/when Defendants would respond to the cross-motion, defense counsel notified the Chancellor's assistant that Defendants do not intend to file a response and agree with J.P. Morgan that the other issues addressed in the Opinion should be the subject of any interlocutory appeal.

[6] Sup. Ct. R. 42(b)(i).

[7] Sup. Ct. R. 42(b)(ii).

[8] Sup. Ct. R. 42(b)(iii).

5

because each of these three issues is one of first impression.[9] The only question is whether appellate review should proceed now or await the entry of a final judgment.

3. At first blush, this case seems like a strong candidate for interlocutory review given that three issues of first impression have been decided at the pleadings stage. When the factual intricacies and overall context of the parties' dispute are considered, however, the likely benefits of interlocutory review are outweighed in my opinion by a number of factors. In particular, certification of an interlocutory appeal (i) will not terminate this action in my view, (ii) certainly will not resolve the overall dispute between the parties given the pendency of another case between them involving similar issues, and (iii) may be of limited or no utility to the parties in this case since the issues decided in the Opinion may become academic. At a minimum, these factors make the balance of the likely benefits and probable costs of interlocutory review uncertain. Accordingly, the court will deny certification.[10]

4. Factors (D), (E), and (F) of Rule 42(b)(iii) are inapplicable. With respect to factor (G), the court does not believe that interlocutory review would

---

[9] *See* Sup. Ct. R. 42(b)(iii)(A) (providing that a trial court should consider whether "[t]he interlocutory order involves a question of law resolved for the first time in this State").

[10] *See* Sup. Ct. R. 42(b)(iii) ("After considering [the Rule 42(b)(iii) factors] and its own assessment of the most efficient and just schedule to resolve the case, the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal.").

terminate this action because even if this court's holding concerning the one-year discovery period in Section 1309(1) were reversed, all of J.P. Morgan's claims likely would not be dismissed. For example, as discussed in the Opinion, there is no allegation that J.P. Morgan knew about any dividends paid in 2006 or 2007 until February 2018, less than one year before this suit was filed.[11] Thus, the unlawful transfer claims based on dividends paid in those years should survive even if Section 1309(1) were construed so that the one-year discovery period begins to run when the mere existence of an allegedly fraudulent transfer is or could reasonably have been discovered.

5. Further, the only allegations in the record suggesting that J.P. Morgan may have known more than one year before filing suit that dividends were paid during the 2008 to 2010 period come from depositions in which the witnesses (i) gave vague answers, apparently from memory without the aid of documents; (ii) provided no precision about the specific years in which dividends were paid, other than that the last dividend allegedly was paid at the end of 2011;[12] and (iii) were instructed not to answer numerous questions that prevented J.P. Morgan from

---

[11] *JPMorgan Chase*, 2019 WL 3022338, at *23 (stating that "the cited testimony made J.P. Morgan aware at most that DTC had issued some dividends in the 2008 to 2011 time frame").

[12] Contrary to this testimony, J.P. Morgan alleges in its first action that DTC paid approximately $3.1 million in dividends in 2012. *JPMorgan Chase*, C.A. No. 2017-0923-AGB, Verified Compl. ¶ 68.

7

gaining clarity on what dividends were paid and when.[13]  Accordingly, depending on the outcome of discovery, some and potentially all of the dividends paid in these later years also may survive even if this court's interpretation of Section 1309(1) were reversed.

6.     Looking at the broader picture, appellate review will not resolve the overall dispute between the parties.  As noted above, the first action J.P. Morgan filed, which challenges dividends DTC paid in 2011 and 2012, is in discovery and moving forward.  As a matter of judicial efficiency, and for the parties' own benefit, that case should be consolidated with this action because both cases involve similar issues and the discovery to be taken likely will come from the same sources.

7.     Furthermore, although it is difficult to predict, it is conceivable that appellate review of some or all of the issues decided in the Opinion may never be necessary—for example, if discovery were to show that J.P. Morgan did not discover and could not reasonably have discovered more than one year before filing this action about the payment of some (but not necessarily all) of the dividends challenged in this case, which would yield a recovery sufficient (possibly in combination with the dividends challenged in the first action) to satisfy its Judgment.  At a minimum, allowing this action to proceed to a final judgment would create a

---

[13] *JPMorgan Chase*, 2019 WL 3022338, at *23-24.

more precise factual context for the Supreme Court to consider whatever issues decided in the Opinion that remain in play at that point.

8.　Despite Defendants' arguments to the contrary, the court is not convinced that factors (B) or (C) of Rule 42(b)(iii) are satisfied. Rule 42(b)(iii)(B) asks the court to consider whether the decisions of the trial courts are conflicting upon a question of law. There are no such conflicts here as the key legal issues are all issues of first impression in Delaware. Although there is a split between courts in the United States over the meaning of the one-year discovery period under the Uniform Fraudulent Transfer Act, that split is irrelevant because it cannot be resolved by an appeal to the Delaware Supreme Court.

9.　Rule 42(b)(iii)(C) provides that the court should consider whether the question of law relates to the "application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order."[14] Although the issues decided in the Opinion certainly relate to the application of two Delaware statutes, the court does not believe it would be efficient or serve the overall interests of justice to have the Supreme Court review those issues before entry of a final judgment for the reasons discussed above.

---

[14] Sup. Ct. R. 42(b)(iii)(C).

9

10. Finally, one additional consideration bears mention. The court is concerned that a delay of discovery in this action would impede a fair disposition of the merits. As discussed in the Opinion, the underlying transactions occurred years ago; a key witness in this case (Claudio Ballard) passed away while this action has been pending; the record in the Texas action reflects efforts by DTC to obstruct and delay discovery, both before and after the entry of the Judgment; and—whether inadvertent or intentional—corporate documents of DTC have been destroyed in recent years.[15]

11. For the reasons explained above, the court does not believe that "the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice."[16] Accordingly, Defendants' motion for certification of an interlocutory appeal is denied.[17]

_____
Chancellor

---

[15] *JPMorgan Chase*, 2019 WL 3022338, at *5-6, 23-25.

[16] Sup. Ct. R. 42(b)(iii); *see also* Sup. Ct. R. 42(b)(iii)(H) (directing courts to analyze whether review "may serve considerations of justice").

[17] If the Supreme Court comes to a different conclusion on certification, any interlocutory appeal should entail consideration of all the issues decided in the Opinion. Accordingly, in that circumstance, I would grant J.P. Morgan's alternative cross-motion for certification of an interlocutory appeal.